UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIBANK, N.A.,<br>701 E. 60th Street North<br>Sioux Falls, SD  57104<br><br>                    Plaintiff,<br><br>        v.<br><br>BURK & REEDY LLP<br>1818 N Street NW, Suite 400<br>Washington, DC  20036-2406<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Citibank, N.A. ("Citibank") through counsel, for its Complaint in this matter against Defendant Burk & Reedy LLP, alleges and states as follows:

**Introduction**

1.      Citibank brings this action against its customer, Defendant Burk & Reedy LLP ("Defendant" or "Burk & Reedy"), to recover a loss incurred as a result of a significant overdraft in an account maintained at Citibank by Defendant.

2.      Defendant is a law firm operating in the District of Columbia.  Defendant maintained an IOLTA account with Citibank for the purpose of managing transactions involving client funds.

3.      In August, 2012, Defendant deposited a fraudulent cashier's check in its IOLTA account.  Defendant immediately issued instructions to Citibank to send an international wire transfer.  Citibank honored its customer's instructions and sent the wire transfer.  When the

fraudulent cashier's check was returned unpaid to Citibank, a significant overdraft, in excess of $300,000, resulted.  Despite demand by Citibank, Defendant has not cured the overdraft.

4.      Governing legal principles dictate that Defendant is responsible to Citibank for losses ensuing from the deposit of fraudulent checks and the sending of wire transfers by Citibank pursuant to instructions given by its customer.  As a direct and proximate result of its customer's transactions, which are set forth in more detail herein, Citibank has suffered a loss in excess of $300,000.  Citibank brings this action to recover this loss.

## The Parties

5.      Citibank, N.A. is a federally-chartered national bank with its main office in South Dakota.

6.      Burk & Reedy LLP is a limited liability partnership organized under the laws of the District of Columbia.  Burk & Reedy is a law firm with offices in the District of Columbia and California.

## Jurisdiction and Venue

7.      This action is brought by a federally-chartered bank with its main office in South Dakota against a limited liability partnership with its principal place of business in the District of Columbia.  The amount in controversy exceeds $75,000.  This court has subject matter jurisdiction over this action based on the diversity of the parties.  28 U.S.C. § 1332.

8.      Because it is organized under the laws of the District of Columbia and maintains its principal place of business in the District of Columbia, Defendant is subject to personal jurisdiction in this Court.  Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(a).

## Factual Allegations

9.      On or about June 6, 2001, Burk & Reedy LLP filed its Statement of Qualification of Limited Liability Partnership with the District of Columbia Department of Consumer and

2

Regulatory Affairs ("DCRA").  The Statement of Qualification was signed by James E. Burk and

Alan M. Reedy, who each identified his position in Burk & Reedy LLP as "Partner."

10.     Also on or about June 6, 2001, the DCRA issued its Certificate confirming that

Burk & Reedy was authorized to function as a duly qualified limited liability partnership under

District of Columbia law.

11.     On or about June 10, 2001, Burk & Reedy opened accounts with Citibank for the

purpose of operating its business as a law firm.  One of the accounts opened at that time was an

IOLTA attorney escrow account ("Account"), which Burk & Reedy opened for the purpose of

handling transactions involving client funds.

12.     James E. Burk was the sole signatory on the Account.  Burk & Reedy, by and

through James E. Burk, has operated the Account continuously since June, 2001.  James E. Burk

has retained his position as authorized signatory on the Account at all times since June, 2001.

13.     Burk & Reedy signed documents in connection with opening its bank accounts,

including but not limited to the Account.  One of these documents was a General Deposit

Resolution, which James E. Burk signed in his capacity as Partner in Burk & Reedy LLP.

14.     The General Deposit Resolution states as follows regarding the parties' respective

rights and obligations in connection with all accounts, including the Account:

> The business identified in this Business Resolution (the
> "Business") acknowledges that all accounts now or hereafter
> established under this Business Resolution shall be governed by
> the rules and regulations of Citibank, N.A. (the "Bank") including
> those set forth in the Bank's CitiBusiness Client Manual, receipt of
> which is hereby acknowledged, and applicable state and federal
> laws.

15.     The General Deposit Resolution states as follows regarding the power of

authorized signatories to transact business in all accounts, including the Account:

> Each person who signs this Business Resolution is authorized on

behalf of the Business to open deposit accounts at the Bank, sign checks and other orders with respect to any funds to the credit of the Business and to give the Bank instructions to withdraw funds, to endorse and deposit checks and other items that are payable or belonging to the Business and to otherwise transact on all accounts of the Business in any manner permitted by the Bank. The Business agrees that the Bank assumes no responsibility for the payment of a check, draft or other item drawn on any Business account or for any withdrawal from any account which is honored and bears only a single signature of one of the individuals designated below. The Bank may rely on this authorization for each account until the Bank receives written notice revoking the authorization at the office where the account is maintained and until the Bank has had a reasonable time to act on such notice.

16.     The CitiBusiness Client Manual ("Manual") makes clear that by placing a wire transfer order, a Citibank customer authorizes Citibank to debit the relevant account for the amount of the wire and any applicable fees:

> When you place an order to transfer money, you authorize us to debit your account for the amount of the order, and you authorize us to charge your account a service fee in accordance with our fee schedule in effect at the time of your order.

17.     The Manual further assigns the risk associated with any inaccurate identification of the beneficiary to the customer:

> Any losses resulting from an incorrect account number or other misidentification of the beneficiary are your responsibility and not Citibank's.

18.     The Manual further specifies that the customer is responsible for promptly repaying any overdrawn balances:

> Each account owner is jointly or severally responsible for promptly repaying any overdrawn balances created in the account and associated interest charges, whether or not the owner participates in the transaction or benefits from its proceeds.

19.     On August 22, 2012, Burk & Reedy, by and through James E. Burk, deposited a purported cashier's check ("Check") into the Account. The amount of the Check was

$389,650.00.  The face of the Check indicated that it was drawn on Fifth Third Bank.

20.     Immediately after depositing the Check, Burk & Reedy, by and through James E. Burk, issued unconditional instructions to Citibank, directing Citibank to complete a wire transfer ("Wire") to an account in Japan.  The amount of the Wire was $298,650.00.  Citibank sent the Wire per its customer's instructions.

21.     In addition to sending the Wire, Burk & Reedy, by and through James E. Burk, transferred $5,000.00 from the Account to a separate operating account maintained by Burk Law Firm, P.C., an affiliate of Burk & Reedy.  Upon information and belief, Burk & Reedy retained this amount to cover its purported attorneys' fees in connection with this matter.

22.     The Check was fraudulent.  Fifth Third Bank therefore returned the Check to Citibank unpaid.  As a result of the Wire and of the transfer for its own benefit, a substantial overdraft was created in the Account.  The amount of the overdraft was $303,423.97.

23.     Citibank has demanded that its customer, Burk & Reedy, return to Citibank the sum of $303,423.97.  Burk & Reedy has refused Citibank's demand.  Citibank brings this action to recover a judgment in this amount, plus costs and attorneys' fees.

### Claims for Relief

### Count One
### (Breach of Contract)

24.     Citibank incorporates by reference the allegations in paragraphs 1 through 23 as if fully set forth herein.

25.     When it executed the account opening documents, including but not limited to the General Deposit Resolution, Burk & Reedy undertook binding contractual obligations to Citibank.  Included among these binding contractual obligations was the duty to take responsibility for the validity of any financial instrument deposited into the Account, and to

promptly cure any overdraft in any Account by repaying any overdrawn balances created in the Account.

26.     Burk & Reedy breached the foregoing contractual obligations by depositing the Check into the Account and then issuing instructions to Citibank to send the Wire to a specified overseas account.  As a direct and proximate result of Defendant's deposit of the Check and instructions to send the Wire, an overdraft was created in the Account, in the amount of $303,423.97.

27.     Despite demand, Defendant has not repaid Citibank any portion of the overdraft in the Account.  Defendant therefore owes Citibank the amount of the overdraft, $303,423.97, plus pre-judgment interest for each day from August 22, 2012 until the date of judgment herein, as damages for Defendant's breach of contract.

WHEREFORE, Citibank respectfully prays that this Court enter judgment against Defendant Burk & Reedy LLP in an amount to be proven at trial in excess of $303,423.97, such judgment to include pre- and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

**Count Two**
**(Breach of Warranty)**

28.     Citibank incorporates by reference the allegations in paragraphs 1 through 27 as if fully set forth herein.

29.     Section 4-207 of the Uniform Commercial Code ("UCC"), codified in the District of Columbia at D.C. Code Ann. §  28:4-207, sets forth the transfer warranties made by a customer that transfers an item to a depositary bank and thereafter receives a settlement or other consideration.  Specifically, a customer who transfers an item to a depositary bank warrants in relevant part that:

(1)    The warrantor is a person entitled to enforce the item;
(2)    All signatures on the item are authentic and authorized;
(3)    The item has not been altered; [and]
(4)    The item is not subject to a defense or claim in recoupment (section 28:3-305(a)) of any party that can be asserted against the warrantor[.]

D.C. Code Ann. § 28:4-207(a).

30.    Section 4-207 of the UCC further provides that a person to whom the transfer warranties are made is entitled to "recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach." *Id.*, § 28:4-207(c).

31.    When it deposited the Check, Burk & Reedy functioned as a "customer" that "transfer[red] an item and receive[d] a settlement or other consideration[.]"  The amount of the settlement or other consideration received by Burk & Reedy was $303,650.00.

32.    When it received the check for deposit from Burk & Reedy, Citibank functioned as a "transferee," and was thereby entitled to receive from its transferor the warranties set forth in section 4-207(a) of the UCC as codified in the District of Columbia.  Burk & Reedy therefore as a matter of law issued to Citibank the statutory transfer warranties set forth in section 4-207(a) of the UCC.

33.    Burk & Reedy breached each of the section 4-207 transfer warranties set forth above.  Burk & Reedy was not "a person entitled to enforce" the Check.  The signatures on the Check were not "authentic and authorized."  The Check had in fact "been altered."  And, because the Check was fraudulent, the Check was subject to defenses or claims in recoupment against Burk & Reedy.

34.    As a direct and proximate result of Defendant's breach of warranties, an overdraft was created in the Account, in the amount of $303,423.97.  This sum constitutes cognizable

damages proximately caused by Defendant's breaches of warranty.

35.     Despite demand, Defendant has not repaid Citibank any portion of the overdraft in the Account. Defendant therefore owes Citibank the amount of the overdraft, $303,423.97, plus pre-judgment interest for each day from August 22, 2012 until the date of judgment herein, as damages for Defendant's breach of warranty.

WHEREFORE, Citibank respectfully prays that this Court enter judgment against Defendant Burk & Reedy LLP in an amount to be proven at trial in excess of $303,423.97, such judgment to include pre- and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

BALLARD SPAHR LLP

February 6, 2013                    /s/ Daniel J. Tobin
                                    Daniel J. Tobin (Bar No. 434058)
                                    tobindj@ballardspahr.com
                                    BALLARD SPAHR LLP
                                    4800 Montgomery Lane, 7th Floor
                                    Bethesda, MD 20814-3401
                                    Telephone: 301.664.6200
                                    Facsimile: 301.664.6299

                                    *Attorneys for Plaintiff Citibank, N.A.*

DMEAST #16228973 v2